IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BEVERLY L. CAMAT,        )    CIVIL NO. 12-00149 SOM/BMK
                          )
        Plaintiff,    )
                          )    ORDER DISMISSING SECOND
    vs.               )    AMENDED COMPLAINT WITH LEAVE
                          )    TO AMEND
FEDERAL NATIONAL MORTGAGE   )
ASSOCIATION; BANK OF AMERICA, )
N.A., successor in merger to )
BAC Home Loans Servicing, LP, )
fka Countrywide Home Loans   )
Servicing, LP; BANK OF      )
AMERICA, N.A.; BAC HOME LOANS )
SERVICING, LP.; COUNTRYWIDE  )
HOME LOANS SERVICING, LP.;   )
COUNTRYWIDE HOME LOANS, INC.; )
MORTGAGE ELECTRONIC       )
REGISTRATION SYSTEMS, INC.;  )
DOE DEFENDANTS 1-10,      )
                          )
        Defendants.   )
_____ )

**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**

**I.**        **INTRODUCTION.**

       This removed action arises out of mortgage loan transactions. Plaintiff Beverly L. Camat asserts various causes of action relating to her mortgage loans and the nonjudicial foreclosure of her home.[1] See Notice of Removal, Mar. 14, 2012, ECF No. 1.

_____

     [1]The Second Amended Complaint attached to the notice of removal lacked a signature. Camat subsequently submitted a signed signature page for the Second Amended Complaint. See Plaintiff Beverly L. Camat's Submission of Signed Signature Page, June 18, 2012, ECF No. 19.

Defendants seek dismissal of the Second Amended Complaint. See ECF No. 8. That motion is granted based on Camat's pleading deficiencies.

## II.        BACKGROUND.

Hoping to purchase a home in Hawaii Kai, on the island of Oahu, Hawaii, Camat contacted Countrywide Home Loans, Inc., about obtaining financing. See Second Amended Complaint for Wrongful Foreclosure and Quiet Title ¶¶ 3 and 13, Feb. 22, 2012, ECF No. 1-1. A Countrywide employee "introduced" Camat to Gilbert Borrego, a mortgage consultant with First Magnus Financial Corporation, which was apparently doing business as Charter Funding Mortgage. Id.

On May 8, 2007, Borrego prequalified Camat for loans of $769,000 and $785,100. The prequalification letters did not state any loan terms and did not promise that First Magnus would actually lend Camat money. Instead, the prequalifying letters noted that any actual loan was conditioned on, among other things, satisfaction of "underwriting criteria" and "[s]atisfactory income/asset documentation" before closing. Id.; see also Prequalifying Letters, ECF No. 1-1, PageID #s 28-29.

Camat says she relied on the prequalification letters in signing a Deposit Receipt Offer Acceptance and gave the sellers of the home she intended to purchase a nonrefundable

$10,000 deposit.  The purchase price of the home was $769,000.
See Second Amended Complaint ¶ 14.

Camat alleges that she was "surprised" when, after she
had signed the DROA, First Magnus told her the actual loan terms
it was offering.  Camat says she did not expect two loans
totaling $769,000, or a combined monthly mortgage payment
exceeding $4,000.  Id. ¶ 15.  Camat knew that, if she entered
into those loans, her regular expenses and the monthly payments
on the loans would exceed her monthly income.  Id. ¶ 16.  Camat
alleges that she told First Magnus that she would be unable to
make $4,000 monthly payments.  Camat says that someone working
for First Magnus told her that she would be able to refinance the
loans at a lower rate in a few months.  Id.

As the loan closing date approached, Camat says she was
further surprised to learn that closing costs totaled $23,000.
Id. ¶ 18.

On June 25, 2007, Camat closed on two loans.  She
executed a $615,200 note for loan number 4692521423.  Id. ¶ 19;
Interest-Only Period Fixed Rate Note, ECF No. 1-1, PageID #30.
This note was secured by a mortgage filed in the State of Hawaii
Bureau of Conveyances on June 29, 2007, as Document No. 2007-
116555.  See Mortgage, ECF No. 1-1, PageID #43.

The mortgage securing the $615,200 note lists First
Magnus as the "Lender" and indicates that Mortgage Electronic

Registration Systems, Inc. ("MERS"), "is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns." Id., PageID #44. The mortgage states that Camat "does hereby mortgage, grant and convey to MERS (solely as nominee for [First Magnus and its] successors and assigns) and to the successors and assigns of MERS, with power of sale," the property that Camat purchased using the proceeds of the loan. Id., PageID #45. It then states that Camat

> understands and agrees that MERS holds only
> legal title to the interests granted by
> [Camat] in this Security Instrument, but, if
> necessary to comply with law or custom, MERS
> (as nominee for [First Magnus and its]
> successors and assigns) has the right: to
> exercise any or all of those interests,
> including, but not limited to, the right to
> foreclose and sell the Property; and to take
> any action required of [First Magnus]
> including, but not limited to, releasing and
> cancelling this Security Instrument.

Id.

The closing instructions for the $615,200 loan indicated, "THIS IS A COUNTRYWIDE SPECIFIC PROGRAM REQUIRING OFF-SHEET PRICING." See Closing Instructions for Loan No. 4692521423, ECF No. 1-1, PageID #70.

Camat alleges that, also on June 25, 2007, she closed on a second loan. See Second Amended Complaint ¶ 19. As the parties agreed at the hearing on the present motion, the second loan was documented in a Home Equity Credit Line Agreement and Disclosure Statement for Loan No. 4079600763, with a credit limit

4

of $115,350, that Camat signed.  <u>See</u> ECF No. 1-1, Page ID #33.

The $115,350 line of credit was secured by a mortgage filed in

the State of Hawaii Bureau of Conveyances on June 29, 2007, as

Document No. 2007-116556.  <u>See</u> Mortgage, Security Agreement and

Financing Statement, ECF No. 1-1, PageID #59.  The mortgage lists

MERS as the nominee for First Magnus.  <u>Id.</u>

      In letters dated July 11, 2007, First Magnus informed

Camat that the "servicing of your mortgage, that is, the right to

collect payments from you" for both loans was "being assigned,

sold or transferred" to Countrywide Home Loans, Inc., effective

August 1, 2007.  <u>See</u> Notice of Assignment, Sale, or Transfer of

Servicing Rights, July 11, 2007, ECF No. 1-1, PageID #74 and #75.

      On or about August 21, 2007, First Magnus filed a

Chapter 11 Bankruptcy Proceeding in the United States Bankruptcy

Court for the District of Arizona.  <u>See</u> ECF No. 1-1, PageId #89.

      A public-access document attached to the Second Amended

Complaint indicates that, as of May 30, 2008, First Magnus was in

the process of dissolving.  <u>See</u> ECF No. 1-1, PageID #92.  The

same document indicates that First Magnus was administratively

dissolved on April 2, 2009.  <u>Id.,</u> PageID #94.

      On February 27, 2009, an Assignment of Mortgage was

filed in the State of Hawaii Bureau of Conveyances as Document

No. 2009-030068.  <u>See</u> ECF No. 1-1, PageID #83.  Via this

document, MERS, in its capacity as nominee of First Magnus,

assigned the mortgage securing the $615,200 note to Countrywide Home Loans Servicing, LP. Id.

On February 27, 2009 (the day that the mortgage was assigned to Countrywide Home Loans Servicing, LP), Countrywide Home Loans Servicing, LP, filed a Notice of Mortgagee's Intention to Foreclose Under Power of Sale in the State of Hawaii Bureau of Conveyances as Document No. 2009-030069. See ECF No. 1-1, PageID #85.

Camat's home was sold to BAC Home Loans Servicing, LP, via a nonjudicial foreclosure for $727,580.06. See Mortgagee's Affidavit of Foreclosure Under Power of Sale, filed on September 2, 2010, in the State of Hawaii Bureau of Conveyances as Doc. No. 2010-129445, ECF No. 1-1, PageID #s 97 and 99.

A quitclaim deed filed on November 12, 2010, in the State of Hawaii Bureau of Conveyances as Document No. 2010-174169, indicates that BAC Home Loans Servicing, LP, then transferred its interest in Camat's home to the Federal National Mortgage Association ("Fannie Mae").

**III.      STANDARD.**

Defendants seek to dismiss the Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by

6

motion: . . . (6) failure to state a claim upon which relief can be granted."

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. <u>See</u> <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)). A motion to dismiss may also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as a statute of limitations. Imbler v. Pachtman, 424 U.S. 409 (1976).

**IV.      ANALYSIS.**

   **A.   Count One, Which Asserts Violations of Chapter 480 of Hawaii Revised Statutes, is Dismissed.**

At the hearing on the present motion, Camat clarified that Count One of the Second Amended Complaint is being asserted against Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing, LP, now known as Bank of America, N.A. Count One asserts that these Defendants violated chapter 480 of Hawaii Revised Statutes by ignoring standard loan underwriting

8

requirements in qualifying Camat for the loans.  See Second
Amended Complaint ¶ 38.  Camat contends that the prequalifying
letters did not state the terms of the loans and qualified her
for loans she could not afford.  Camat claims that these acts
were therefore "unfair, deceptive, oppressive, predatory,
unconscionable, and contrary to public policy."  Id. ¶ 39.

        Countrywide Home Loans, Inc., and Countrywide Home
Loans Servicing, LP, now known as Bank of America, N.A., seek
dismissal of Count One, arguing that the factual allegations in
the Second Amended Complaint fail to allege that they had
anything to do with the prequalification and issuance of loans to
Camat.  Instead, the Second Amended Complaint alleges that
Gilbert Borrego, a mortgage consultant with First Magnus,
prequalified Camat for her loans.  See Second Amended Complaint
¶ 13; Prequalifying Letters, ECF No. 1-1, PageID #s 28-29.  The
right to collect payments on Camat's $615,200 loan was assigned
by MERS, nominee of First Magnus, to Countrywide Home Loans,
Inc., effective August 1, 2007.  See ECF No. 1-1, PageID #74 and
#75.  The mortgage was assigned to Countrywide Home Loans
Servicing, LP, on February 27, 2009.  Id., PageID #83.  There are
simply no facts alleged in the Second Amended Complaint that
support its conclusory allegation that Countrywide Home Loans,
Inc., or Countrywide Home Loans Servicing, LP, now known as Bank
of America, N.A., was involved with qualifying Camat for her

loans.  At most, the closing instructions for the $615,200 loan
state that "THIS IS A COUNTRYWIDE SPECIFIC PROGRAM REQUIRING OFF-
SHEET PRICING."  See, Closing Instructions for Loan No.
4692521423, ECF No. 1-1, PageID #70.  That language does not
demonstrate that any Defendant named in Count One was involved
with qualifying Camat for the loan.

        Citing Yamaguchi v. United States Department of the Air
Force, 109 F.3d 1475 (9th Cir. 1997), Camat argues that her
Second Amended Complaint is sufficient because it does not appear
beyond doubt that she can prove no set of facts entitling her to
relief.  Camat misunderstands the liberal pleading requirements.
Under Rule 8(a)(2) of the Federal Rules of Civil Procedure,
Camat's Second Amended Complaint was required to contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  In 2007, the Supreme Court clarified that,
to survive a Rule 12(b)(6) motion to dismiss, "factual
allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all the allegations in
the complaint are true even if doubtful in fact."  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and
internal quotations omitted).  Accord Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) ("the pleading standard Rule 8 announces does not
require 'detailed factual allegations,' but it demands more than
an unadorned, the-defendant-unlawfully-harmed-me accusation").

The Supreme Court stated, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In other words, "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 678.

A complaint is required to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Nothing in the Second Amended Complaint allows a reasonable inference to be drawn that Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP, now known as Bank of America, N.A., is liable for the prequalification letters or Camat's qualifying for the loans, as that conduct was allegedly done by First Magnus.

Camat argues that this case involves "table funding." That is, Camat argues that, because funding for her loan may have been provided by Countrywide Home Loans, Inc., First Magnus became its agent, making Countrywide Home Loans, Inc., and

11

Countrywide Home Loans Servicing, LP, now known as Bank of America, N.A., liable for their purported agent's actions.  <u>See</u> Opposition at 5; Second Amended Complaint ¶ 21 ("Although both loans indicate First Magnus as the lender, Countrywide appears to be the funding source . . . .").  However, no facts establishing such an agency relationship are alleged in the Second Amended Complaint.  Certainly, no facts are alleged that support a claim against Countrywide Home Loans Servicing, LP, now known as Bank of America, N.A., as Camat contends that Countrywide Home Loans, Inc., was the entity that may have provided the funding.

No reasonable inference that First Magnus was Countrywide Home Loans, Inc.'s agent flows from the allegation that Countrywide Home Loans, Inc., may have provided the funds lent to Camat.  <u>See</u> Restatement (Third) of Agency § 1.01 ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").  At the hearing, Camat appeared to concede as much when she noted that, if given the opportunity, she could expand on the facts regarding the supposed agency relationship.  Camat must allege something more to establish agency, especially when the allegations of the Second Amended Complaint are vague enough to allow for the possibility that First Magnus initially

funded the loan but then promptly sold it to Countrywide Home
Loans, Inc.  Accordingly, Count One is dismissed.

### B. Count Two, Which Asserts Fraud in the Inducement, is Dismissed.

Count Two of the Second Amended Complaint asserts that
Countrywide Home Loans, Inc., and Countrywide Home Loans
Servicing, LP, now known as Bank of America, N.A., fraudulently
induced Camat into entering into the loans.  Camat says that she
relied on the loan prequalification to her detriment.  That is,
Camat allegedly felt forced to sign the loan documents because
she had already entered into a DROA for the property that
provided for a nonrefundable $10,000 deposit.  Camat faults the
named Defendants for offering the loan terms that she accepted.
See Second Amended Complaint ¶¶ 14, 42.  Camat also bases Count
Two on a First Magnus employee's alleged representation that
Camat could refinance her loans at a lower rate.  Id. ¶¶ 16, 17.

Like Count One, the fraudulent inducement claim
asserted in Count Two fails to meet the minimum pleading standard
set forth in Rule 8(a)(2) of the Federal Rules of Civil
Procedure.  It certainly fails to satisfy the heightened pleading
standard for fraud-based claims set forth in Rule 9(b) of the
Federal Rules of Civil Procedure.  As discussed above, the Second
Amended Complaint alleges that Gilbert Borrego of First Magnus
prequalified Camat for the loans.  There are no factual
allegations in the Second Amended Complaint indicating that

13

Countrywide Home Loans, Inc., or Countrywide Home Loans

Servicing, LP, now known as Bank of America, N.A., had any

involvement in the prequalification process.  Nor are there any

allegations indicating that any Defendant named in this count

promised Camat that she could refinance her loans at a lower

rate.  As discussed above, to the extent Camat may be asserting

that the named Defendants are liable for fraud because First

Magnus was their agent, the Second Amended Complaint fails to

allege facts from which that agency relationship may be

reasonably inferred.  No viable fraudulent inducement claim is

therefore asserted in the Second Amended Complaint.

Camat's fraudulent inducement claim is also

substantively lacking.  The Hawaii Supreme Court has discussed

fraud in the inducement, stating:

> To constitute fraudulent inducement
> sufficient to invalidate the terms of a
> contract, there must be (1) a representation
> of a material fact, (2) made for the purpose
> of inducing the other party to act, (3) known
> to be false but reasonably believed true by
> the other party, and (4) upon which the other
> party relies and acts to his or her damage.
>
> The false representation, to be actionable,
> must relate to a past or existing material
> fact, and not to the happening of future
> events.  Generally, fraud cannot be
> predicated upon statements [that] are
> promissory in their nature at the time they
> are made and that relate to future actions or
> conduct.  A promise relating to future action
> or conduct will be actionable, however, if
> the promise was made without the present
> intent to fulfill the promise.

Hawaii Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 230, 11 P.3d 1, 18 (2000) (quoting Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 201-02, 753 P.2d 807, 811-12 (1988) (brackets omitted)).

Even assuming that Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP, now known as Bank of America, N.A., could be held responsible for the prequalification letters, no actionable fraudulent inducement claim is alleged in the Second Amended Complaint. At most, the prequalification letters simply stated that Camat would qualify for an unidentified type of loan. The letters did not promise loans on specific terms. In fact, no promise to lend money to Camat was even made in the letters. Instead, the letters conditioned loan qualification on matters such as satisfaction of underwriting criteria and satisfactory income/asset documentation. See Prequalification Letters, ECF No. 1-1, PageID #s 28-29. No false representation of any material fact has been identified in the prequalification letters that could possibly form the basis of a fraudulent inducement claim.

Nor does Camat sufficiently allege a fraudulent inducement claim based on a First Magnus employee's alleged statement to Camat that she could refinance her loan at a lower rate. Interpreting the facts alleged in the light most favorable to Camat, the court finds the claim still lacking. It pertains

to a future event and includes no allegation that the First
Magnus employee who allegedly made the statement, even if
attributable to a named Defendant, lacked a present intention to
fulfill the promise at the time it was made.  See Hawaii Cmty.
Fed. Credit Union, 94 Haw. at 230, 11 P.3d at 18.

      Accordingly, Count Two is dismissed.

### C.   Count Three, Which Asserts a Wrongful Foreclosure Claim, is Dismissed.

      Although Count Three of the Second Amended Complaint
appears to assert that Countrywide Home Loans Servicing, LP,
improperly conducted a nonjudicial foreclosure, Camat indicated
at the hearing that she is asserting this claim against all
Defendants.

      Camat does not allege that she complied with the terms
of the loan.  Instead, Camat contends that she should be relieved
of her obligations under the loan because MERS allegedly
improperly transferred the note and mortgage to Countrywide Home
Loans Servicing, LP, after First Magnus had filed for Chapter 11
bankruptcy, making the note and mortgage part of the bankruptcy
estate.  See Second Amended Complaint ¶ 44.

      Even assuming that Camat can challenge the validity of
the transfer, she lacks a factual basis for her position.  The
mortgage securing the $615,200 note granted MERS, in the capacity
of nominee of First Magnus, the power to foreclose and sell the
property and to take any action required of First Magnus.  See

ECF 1-1, PageID #45.  As this court noted in Cooper v. Bank of
New York Mellon, 2011 WL 3705058, *13 (D. Haw. Aug. 23, 2011),
First Magnus's bankruptcy did not on its own affect the validity
of the assignment, because First Magnus transferred its
beneficial interest in the mortgage to MERS before instituting
the bankruptcy proceedings.  Additionally, the right to collect
on the note was transferred to Countrywide Home Loans Servicing,
LP, effective August 1, 2007.  See Notice of Assignment, sale, or
Transfer of Servicing Rights, July 11, 2007, ECF 1-1, PageID #s
74 and 75.  First Magnus filed the bankruptcy proceeding three
weeks later, on August 21, 2007.  See ECF No. 1-1, PageID #89.[2]

        It is not entirely clear whether Camat is alleging that
MERS improperly assigned the mortgage after First Magnus was
dissolved.  To the extent Camat is making that argument, it is
unpersuasive.  First, it appears to be factually unsupported, as
a document attached to the Second Amended Complaint indicates
that First Magnus was administratively dissolved on April 2,
2009, after the February 2009 assignment of the mortgage by MERS.
See ECF No. 1-1, PageID #92.  But even if it could be argued that
First Magnus was dissolved earlier, that dissolution would not
prevent MERS from transferring any interest in the mortgage.  In

_____

        [2]Camat does not appear to be arguing that the transfer,
having occurred within 90 days of the bankruptcy filing, fell
within the preference period.  It is, by now, too late to assert
such an argument, and Camat does not say she had standing to
raise such an argument in 2007.

<u>Kiah v. Aurora Loan Servs., LLC</u>, 2011 WL 841282, at *4 (D. Mass.

March 4, 2011), for example, the court ruled:

> The plain language of the mortgage states
> that MERS was acting as nominee for First
> Magnus and its "successors and assigns." . .
> .  First Magnus' dissolution would not
> prevent its successors and assigns, including
> Aurora, from seeking transfer of the mortgage
> from MERS.
>
> Accordingly, the dissolution of First Magnus
> would not and could not prevent Aurora from
> obtaining an assignment of the mortgage from
> MERS, both as a matter of law and according
> to the arrangement that existed between MERS
> and Aurora as a "successor and assign" of
> First Magnus.

The court is unpersuaded by Camat's citation of <u>Deutshe

Bank National Trust Company v. Williams</u>, 2012 WL 1081174 (D. Haw.

Mar. 29, 2012), as that case did not involve MERS.  In <u>Williams</u>,

Judge J. Michael Seabright indicated that it "appeared" that Home

123 could not validly assign a mortgage it held while it was in

bankruptcy.  <u>See</u> <u>id.</u> at *3.  <u>Williams</u> did not examine whether

MERS could transfer a mortgage based on language in the mortgage

that allowed MERS to do so.

Because the Second Amended Complaint fails to allege

facts supporting a viable wrongful foreclosure claim, it is

therefore dismissed.

**D.    Count Four, Which Asserts a Claim for Quiet Title, and Count Five, Which Asserts a Claim for Injunctive Relief, Are Dismissed.**

In Count Four of the Second Amended Complaint, Camat seeks to quiet title to her former property against all Defendants.  Camat claims that she is entitled to such relief because of the allegedly wrongful foreclosure.  <u>See</u> Second Amended Complaint ¶ 48.  Similarly, Count Five of the Second Amended Complaint, which seeks injunctive relief, as opposed to asserting a claim, is also based on the allegedly wrongful foreclosure.

Because the wrongful foreclosure claim has been dismissed, there is no factual basis for the quiet title claim and injunctive relief requested in Counts Four and Five of the Second Amended Complaint.  Nor is there a legal basis for Count Five, as a claim for "injunctive relief" standing alone is not a cause of action.  Instead, injunctive relief may be available as a remedy if Camat prevails on a substantive claim.  <u>See</u> <u>Hoilien v. OneWest Bank, FSB</u>, 2012 WL 1379318 (D. Haw. Apr. 20, 2012) ("the Court follows the well-settled rule that a claim for injunctive relief cannot stand as an independent cause of action"); <u>Pugal v. ASC (America's Servicing Co.)</u>, 2011 WL 4435089 (D. Haw. Sept. 21, 2011) (same).  Accordingly, Counts Four and Five are dismissed.  Because amendment of the injunctive relief claim would be futile, that claim is dismissed with prejudice.

Camat may, of course, seek injunctive relief as a remedy for an appropriate claim should she choose to file a Third Amended Complaint.

**V.        CONCLUSION.**

For the foregoing reasons, the motion to dismiss is granted.  Counts One through Four are dismissed without prejudice and Camat is granted leave to file a Third Amended Complaint no later than July 13, 2012.  Although this court would not normally grant leave to file a Third Amended Complaint without a motion, the court notes that no court has examined the sufficiency of any of the prior versions of Camat's pleading.  The original state-court Complaint was filed on June 13, 2011.  See ECF No. 11-3.  An Amended Complaint was filed on July 15, 2011.  See ECF No. 11-4.  On March 21, 2012, Camat filed an Ex Parte Motion for Leave to File the Second Amended Complaint.  See ECF No. 11-6.  That motion was denied, but she renewed her motion on March 21, 2012.  See ECF No. 11-12.  That motion was apparently granted.  Under these circumstances, granting leave to file another amended complaint is appropriate.

Count Five is dismissed with prejudice, as there is no claim that could be reasserted as a viable claim.

IT IS SO ORDERED.

DATED: Honolulu, June 22, 2012.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

Camat v. Fed. Nat'l Mortgage Assn., et al., Civ. No. 12-00149 SOM/BMK; ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND

21